IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

AUG 1 8 2000

CHRISTINE CROWLEY, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY
SITUATED,

               Plaintiff,

      v.

GTE AIRFONE, INC., GTE CORPORATION,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**00C 5062**

**JUDGE CONLON**
Civil Action No.

**MAGISTRATE JUDGE SCHENKIER**

**JURY DEMANDED**

## CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.    Plaintiff Christine Crowley ("Plaintiff") brings this action on behalf of herself and all other consumers of GTE Airfone that, due to Defendants' illegal bundling of airtime and long-distance charges for use of its aircraft-to-ground Airfone telephone service, have been denied a competitive choice of interexchange carriers in completing aircraft to ground interstate telephone calls.  As early as 1993, the Federal Communications Commission ("FCC") opined, with respect to Defendants' bundling of their airtime and long-distance portions of their charges, that the FCC had "serious concerns about the lawfulness of this practice."  Notwithstanding the foregoing, Defendants have continued this practice, and in so doing have contracted to restrain trade, and have monopolized and/or attempted to monopolize the interexchange carrier market for aircraft to ground interstate telephone communications.  Plaintiff brings this action on behalf of herself and all callers who, during the Class period (as defined in Paragraph 60 below), have used

Defendants' Airfone service to place interstate telephone calls from an aircraft to any location in the United States.

2.     In a previous opinion (attached hereto as Exhibit 1) issued by the FCC denying GTE's petition to be exempted from certain requirements of the Telephone Operators Consumer Services Act ("TOCSIA"), the FCC took the opportunity to denounce GTE and GTE Airfone's practice of bundling the air-time and land-based long distance portion of their Airfone rates. Specifically, the FCC noted that:

**We note that Airfone now bundles the airtime and long distance portion of its rates. This bundling would apparently allow Airfone to charge the same rate to the customer regardless of whether the customer chooses his or her own IXC [interexchange carrier]. Under this scenario, if a customer were to choose his or her own IXC, he or she would be billed Airfone's bundled rate and also billed by the chosen IXC, thereby incurring a higher overall charge. _This practice contravenes the underlying goal of TOCSIA which allows callers to choose the IXC offering the best rate and to pay that rate. While we have serious concerns about the lawfulness of this practice, this issue is not within the pureview of this Order._**

(Exh. 1 at. n.32) (emphasis added).

3.     By bundling or tying the airtime and long-distance portion of the Airfone rates, Defendants have put forth a scheme making it impossible for competing IXCs to enter into the air-to-ground interexchange carrier market because, as a result of Defendants' bundling or tying practice, the use of competing IXCs by Airfone customers will necessarily result in higher charges billed to these customers even when the actual long-distance rates charged by competing IXCs are lower than the long-distance rates offered by Defendant for the land-based long-distance portion of the call. This is because, as noted by the FCC, Defendants' tying or bundling practice requires Airfone customers to purchase Defendants' bundled Airfone long-distance/airtime service _in addition to_, rather than instead of, the services of a competing IXC, whenever the Airfone

customer desires to use the services of a competing IXC. Because this practice violates the Telecommunications Act and the antitrust laws, and has injured Plaintiff and the Class members, Plaintiff now brings this action on behalf of herself and all others similarly situated to seek redress from Defendants.

## JURISDICTION AND VENUE

4.      Count I of this Complaint is brought for violations of the Telecommunications Act of 1996. This Court therefore has jurisdiction over this count pursuant to 47 U.S.C. § 207 and 28 U.S.C. § 1331.

5.      Counts II and III of this Complaint are brought pursuant to Section I of the Sherman Act, 15 U.S.C. § 1, to recover treble damages, attorneys' fees and costs, and for injunctive relief. The Court therefore has jurisdiction over these counts pursuant to 15 U.S.C. § 15(a), 28 U.S.C. 1331 and 28 U.S.C. 1337.

6.      Counts IV and V of this Complaint are brought pursuant to Section II of the Sherman Act, 15 U.S.C. § 2, to recover treble damages attorneys' fees and costs, and for injunctive relief. The Court therefore has jurisdiction over these counts pursuant to 15 U.S.C. § 15(a), 28 U.S.C. 1331 and 28 U.S.C. 1337.

7.      Defendants are subject to personal jurisdiction in this district and transact business in this district. Venue in this district is therefore proper pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 15(a), 22.

## PARTIES

8.      Plaintiff Christine Crowley, a resident of Virginia, brings this action on behalf of

herself and all others similarly situated, who during the relevant Class periods placed telephone calls from an aircraft to any location within the United States using Defendants' GTE Airfone service. As a result of Defendants' illegal bundling of the airtime and long-distance portion of their rates for use of the Airfone, Plaintiff and the members of the class were denied a competitive choice of interexchange carriers when placing their aircraft-to-land telephone calls and were forced to pay supra-competitive charges for these calls, even when other less expensive interexchange rates were available and were properly on file through filed tariffs with the Federal Communications Commission ("FCC").

9. Defendant GTE Airfone, Inc. is a New York corporation having its principal place of business at 2809 Butterfield Road, Oak Brook, Illinois 60522. GTE Airfone owns and operates the leading aircraft to land telephone service, known as "GTE Airfone" or "Airfone." GTE Airfone, Inc. is a wholly owned subsidiary of Defendant GTE Corp.

10. GTE Airfone is licensee of the FCC and provides telephone service to passengers of commercial and private aircraft. GTE Airfone owns and operates the radio and passenger handset equipment installed on airplanes equipped with Airfone telephones. GTE Airfone also owns and operates approximately 100 base stations that are used to establish a communications link between aircraft equipment and the ground. From the ground station, calls are routed through GTE Airfone's private network or through the public switched network. Customers are charged an initial activation fee and a time sensitive usage fee. Customers are not charged separately for the land-based portion of long-distance calls.

11. Defendant GTE Corp. is a New York corporation with its principal place of business at 1255 Corporate Drive, Irving, TX 75038. GTE Corp. is a telecommunications company, and is the parent company of its wholly owned subsidiary, Defendant GTE Airfone.

12.     Although the FCC licensed approximately five other entities to offer 800 MHz air-to-ground telephone service such as the Airfone, today Airfone is the overwhelming market leader of such air-to-ground telephone services. As of 1997, GTE Corp. reported that the Airfone was installed in approximately 3,200 aircraft. On information and belief, the number of aircraft equipped with Airfone has increased significantly since 1997, such that today significantly more than 3,200 aircraft are equipped with the Airfone air-to-ground telephone. Currently, Airfone is the exclusive air-to-ground telephone provider for the following airlines: Continental Airlines, Delta Airlines, Delta Shuttle, Delta Express, Midwest Express, Reno air, Trans World Airlines ("TWA"), United Airlines, Shuttle by United Airlines, US Airways, and US Airways Shuttle. Based on the number of passengers that occupy these aircraft on average, and the number of flights taken by these aircraft over the past 4 years, millions of passengers would have had access to an Airfone during the 4 year class period.

13.     Supposedly due to technical limitations and capacity constraints, on any given aircraft equipped with air-to-ground telephone equipment, only one brand of equipment is maintained on that aircraft. Thus, in the over 3,200 airplanes in which Airfone is installed, only Airfone air-to-ground telephones are available to the flying public.


## HOW AIRFONE WORKS

14.     Plaintiff hereby incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

15.     In aircraft equipped with Defendants' Airfone air-to-ground telephone, Defendants provide the Airfone unit. The units consist of passenger handset equipment akin to a typical telephone, which is similar in appearance to a conventional telephone and which is accessible at

varying locations within the aircraft for passenger use. Also within the aircraft, Defendants provide radio equipment to transmit an initial communication link between the aircraft and an initial ground station.

16.     Defendants also own and operate approximately 100 base stations that are used to establish the initial communications link between the Airfone unit on the aircraft and the ground.

17.     In the first generation of Airfone service, once the communications link was established with one of the base stations, the Airfone call was routed either through Airfone's private interexchange carrier network or through the public switched network which operated by numerous competing interexchange carriers.

18.     In the second generation Airfone service, all air-to-ground calls on Airfone were routed from the receiving base station on the ground to one of two switching centers on the ground. In any event, the sequence of the Airfone call is generally the same: a radio communication link is established between the aircraft and a station on the ground, and then that communication is routed on the ground via some network.

19.     To initiate a call on the Airfone, an aircraft passenger must first slide his or her credit card into the telephone handset unit. Additionally, Airfone provides its own live operators to assist customers. The completed call is then billed to the passenger's credit card and the passenger receives a charge for that call on his or her credit card bill received at the passenger's billing address for that credit card.

20.     Passengers using Airfone are charged an activation fee, currently set at $2.99. In addition, passengers are charged a time sensitive usage fee, currently set at $3.28 per minute. Passengers are not charged separately for the land-based portion of long-distance calls.

## STATUTORY FRAMEWORK

**The Telephone Operator Consumer Services Improvement Act- Key Goals and Provisions:**

21.     In October 1990, Congress passed the Telephone Operator Consumer Services Improvement Act of 1990, 47 U.S.C. § 226 (1990) ("TOCSIA"), "to protect consumers who make interstate operator services calls from pay telephones, hotels, and other public locations against unreasonably high rates and anticompetitive practices." S. Rep. No. 439, 101st Cong., 2d. Sess. at 1 (1990). That Act has been incorporated into the Telecommunications Act of 1996 and, under 47 U.S.C. § 207 "any person claiming to be damaged by any common carrier subject to the provisions of" the Act "may bring suit for recovery of the damages for which such common carrier may be liable."

22.     In passing TOCSIA, Congress noted that in recent years, a number of operator services companies had emerged. These operator services providers ("OSPs") compete with local exchange and long distance carriers by providing telephones to the general public.

23.     When a caller dials an operator assisted sequence from a telephone served by one of these OSPs, the call is routed automatically to the OSP. Under the Act, as interpreted by the FCC, all credit card calls are considered "operator assisted" whether the customer utilizes a live operator or not. Therefore, a service such as Airfone, wherein credit cards are used, is considered to be an"operator assisted" call and subject to the provisions of TOCSIA.

24.     In enacting TOCSIA, Congress was addressing two main concerns: ensuring that consumers are aware of the identity of the pre-subscribed operator service provider; and, guaranteeing that callers are able to employ the carrier of their choice in placing operator-assisted calls. Accordingly, in 1991, the FCC adopted rules and regulations pertaining to operator service providers as mandated by Congress.

**The FCC Rules Enacted Pertaining to TOCSIA – "Call Branding" and "Call Splashing":**

25.     There are two categories of rules adopted pursuant to TOCSIA: rules which are applicable to "aggregators" (a term of art as defined in Exh. 1), and rules which are applicable to "operator service providers" ("OSP") (a term of art as defined in Exh. 1). Under the FCC's Order (i.e. Exh. 1), Airfone's service is considered both an "aggregator" and an OSP and is thus subject to the rules applicable to both categories of entities.

26.     Pursuant to the FCC's rules adopted under TOCSIA, an aggregator, such as Airfone, is required to post certain information on or near the telephone. The aggregator must also ensure that its telephones do not block the access codes to other than the presubscribed OSPs so consumers have the ability to utilize other providers of operator services. Finally, the aggregator must ensure that no charge by the aggregator to the consumer for using an access code to another OSP is greater than for calls placed using the presubscribed OSP.

27.     Under the pertinent FCC Rules, an OSP, such as Airfone, must provide certain information to the consumer at no charge, and may not bill for unanswered calls, engage in "call splashing" (a term of art defined below) except as authorized by law (as defined in paragraph 29 below), or bill for a call that does not reflect the origination of the call.

28.     "Call splashing" refers to the transfer of a telephone call from one provider of operator services to another where the second provider is unable to determine the location of the originating call and is prevented from billing the call on the basis of such location. For example, a consumer in a hotel in Washington, DC wishes to place a call using a calling card from his chosen interexchange carrier to Baltimore, Maryland. The presubscribed OSP for that hotel is based in Chicago. The OSP is unable to accept the calling card, so the caller asks the OSP to transfer the call to an operator of his or her chosen interexchange carrier. The operator of the consumer's

carrier of choice is unaware that the call is originating in Washington and believes that the call is originating in Chicago. The customer is, therefore, billed for a call from Chicago to Baltimore, rather than from Washington to Baltimore.

29.     "Call splashing" is allowed when the consumer requests to be transferred to another OSP, the consumer is notified in advance that the rates for the call may not reflect the rates from the originating location of the call, and the consumer thereafter consents to be transferred.  See 47 C.F.R. § 64.705(a)(3); 47 U.S.C. § 226(b)(1)(H).  Allowing "call splashing" under these circumstances, at the consumers request, is inkeeping and critical to achieve TOCSIA's stated goal of preserving consumer choice in telephone operator consumer services.


**Airfone's Petition and The FCC's Ruling on Airfone's Status Under TOCSIA:**

30.     In 1992, Defendants filed a petition for declaratory judgment with the FCC seeking a judgment to the effect that Defendants' Airfone service not be considered subject to the requirements of TOCSIA.

31.     On October 27, 1993, the FCC issued its final declaratory ruling on the matter, and denied Defendants' petition.  That ruling is attached hereto as Exhibit 1.

32.     In its ruling, the FCC explicitly found Defendants to be both aggregators and OSPs in connection with their offering of the Airfone air-to-ground telephone service.  Thus, the FCC explicitly found that Defendants were subject to all the provisions of TOCSIA and the FCC Rules and Regulations pertaining to TOCSIA, covering both aggregators and OSPs.

33.     In their petition for a declaration that they were not subject to TOCSIA and the pertinent Rules and Regulations, Defendants' argued that, given the manner in which the Airfone service works, Defendants would not be able to comply with the "call splashing prohibition" of

Section 64.705(a)(3).

34.     The FCC summarized Defendants' arguments as follows: "The concerns expressed by GTE about its inability to comply with various TOCSIA rules are misplaced. For instance, GTE maintains that Airfone cannot comply with the call splashing prohibition of Section 64.705(a)(3) of the Rules. GTE argues that because it is impossible to determine the precise location where the call was placed it cannot comply with the Section 64.705. Currently if a customer using Airfone chose to use his or her own IXC, the location on the bill would reflect the location of the intercepting ground station and not the actual location of the airplane at the time the call was placed. Airfone is currently converting to a second-generation system that will route all calls from the receiving ground station to one of two switching centers and the location of the call would, therefore, reflect one of these two switching centers in the future." (Exh. 1 at § 19).

35.     Rejecting Defendants' arguments, the FCC, then went on to note that: "However, Section 64.705(a)(3) allows splashing when the customer requests to be transferred to another provider of operator services, the customer is informed that the rates for the call may not reflect the actual originating location of the call, and the customer consents to the transfer. Accordingly, [if] Airfone informs customers in the posting of its rates that they can select the IXC to carry their call, but that the rates charged by that IXC may reflect an originating location other than the plane's actual location, then a customer could choose to use his or her own IXC by consenting to the transfer and the splashing would be allowed." (Exh. 1 at § 20).

36.     As is detailed below, however, contrary to the requirements of TOCSIA and the FCC rulings, Defendants have failed to provide consumers with a requisite choice of IXC's to complete their Airfone calls, and have therefore, violated, inter alia, the Telecommunications Act and the antitrust laws to the detriment of consumers.

## RELEVANT MARKET

37.     The relevant market at issue in this case is the U.S. market for interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls.

38.     Defendants, through the offering of their Airfone air-to-ground telephone service, are the market leaders in air-to-ground telephone service.  As such, Defendant's possess significant market power in the air-to-ground telephone communication market.

39.     Moreover, in those aircraft companies where Defendants' Airfone equipment is installed, Defendants own 100 percent of the market share of air-to-ground telephone communications, as no competing air-to-ground telephones are installed in such aircraft.

40.     As described herein, Defendants exploit their monopoly or near monopoly market power in the air-to-ground telephone communications market to obtain or attempt to obtain a monopoly in the U.S. market for interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls and to restrain trade in this relevant market.

## DEFENDANTS' UNLAWFUL PRACTICE

41.     Plaintiff hereby incorporates all of the paragraphs of this Complaint with the same force and effect as if fully restated herein.

42.     As detailed in paragraph 20, Airfone charges its customers an initial activation fee (currently $2.99) and a time sensitive usage fee (currently $3.28 per minute).  This time sensitive-usage fee is also referred to as the airtime charge.  Airfone does not charge its customers separately for the land-based portion of long-distance calls.  In effect, Defendants' bundle the airtime charge with the long-distance charge that would be applicable to a call placed on Airfone.

43.     After rejecting Defendants' arguments with respect to Defendants' claims as to

why TOCSIA should not apply to their Airfone service, the FCC went on to note, as an additional matter, the anticompetitive and legal implications posed by Defendants' practice of bundling the airtime and long distance portion of their rates to Airfone consumers. Specifically, the FCC noted:

**We note that Airfone now bundles the airtime and long distance portion of its rates. This bundling would apparently allow Airfone to charge the same rate to the customer regardless of whether the customer chooses his or her own IXC. Under this scenario, if a customer were to choose his or her own IXC, he or she would be billed Airfone's bundled rate and also billed by the chosen IXC, thereby incurring a higher overall charge. This practice contravenes the underlying goal of TOCSIA which allows callers to choose the IXC offering the best rate and to pay that rate. While we have serious concerns about the lawfulness of this practice, this issue is not within the pureview of this Order.**

(Exh. 1 at n.32) (emphasis added).

44.     By bundling or tying the airtime and long-distance portion of the Airfone rates, Defendants have put forth a scheme making it impossible for competing IXCs to enter into the air-to-ground interexchange carrier market because, as a result of Defendants' bundling or tying practice, the use of competing IXCs by Airfone customers will necessarily result in higher charges billed to these customers even when the actual long-distance rates charged by competing IXCs are lower than the long-distance rates offered by Defendant for the land-based long-distance portion of the call. This is because, as noted by the FCC, Defendants' tying or bundling practice requires Airfone customers to purchase Defendants' bundled Airfone long-distance/airtime service in addition to, rather than instead of, the services of a competing IXC, whenever the Airfone customer desires to use the services of a competing IXC.

45.     Given the foregoing, every time that Defendants' contract with Airfone users, they have engaged and continue to engage in a contract in restraint of trade amongst the states.

46.     Defendants have used the foregoing bundling billing practice to gain, maintain,

and/or attempt to gain or maintain an unlawful monopoly in the air-to-ground interexchange carrier service market.

47.     Through the foregoing practice, Defendants have remained free to charge whatever price they desire for interstate air-to-ground telephone service, as they are assured that, given their unlawful exclusionary practice, no other IXCs will be able to match their calling rates, given that under Defendants' practice, at the very minimum the Airfone customer must pay Defendants' bundled airtime/long-distance charges in addition to the charges levied by any other IXCs.

48.     As the FCC has noted, Defendants' practice of bundling their Airfone rates contravenes the purpose of TOCSIA by preventing consumers from being able to choose the IXC offering the best rate for their desired call.

49.     Despite the fact that as early as 1993 the FCC noted serious concerns about the lawfulness of Defendants' billing practices with respect to Airfone services, Defendants have continued their practice of bundling the airtime and long-distance portion of their rates to this day.

50.     Plaintiff and the class members have been injured in their property as a direct result of Defendants' unlawful conduct by being denied a competitive choice of air-to-ground interexchange carriers, and instead, being forced to pay Defendants' supra-competitive rates for their interstate air-to-ground telephone calls.

51.     Had Defendants not engaged in the unlawful anti-competitive practice of bundling the various portion of their Airfone rates, Plaintiff and the class members would have been able to use the IXC of their choice that offered the best rate for their desired call.  Instead, as a direct result of Defendants' unlawful conduct, Plaintiff and the class members had no competitive choice but to use Defendants' IXC services when they used the Airfone telephone.  Of necessity, given

Defendants' unlawful conduct, use of any other IXC-- even when that IXC offered a lower long distance rate than Defendants for Plaintiffs' call-- would have resulted in a higher cost for Plaintiff and the class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.     Plaintiff hereby incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

53.     Plaintiff brings this action as a class action pursuant to the laws under Federal Rule of Civil Procedure 23(a) and (b), on behalf of herself and a Class consisting of all aircraft passengers who during the relevant Class periods placed an interstate telephone call using Defendants' Airfone air-to-ground telephone service, and who as a result of Defendants' unlawful practices as described herein, were denied a competitive choice of interexchange carriers to complete their air-to-ground telephone call.

54.     The Class is so numerous that joinder of all members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiff believes that the members of the Class are geographically dispersed throughout the United States and the rest of the world.  While the exact number of the members of the Class is unknown to Plaintiff at this time, Plaintiff believes, based on the millions of passengers that fly in aircraft equipped with Defendants' Airfone, that there are potentially thousands of members of the Class.

55.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and all members of the Class placed telephone calls using Defendants' Airfone air-to-ground telephone and  were forced to submit to Defendants' bundled charges for this service, which prevented plaintiff and the class members from obtaining the most competitive

interexchange carrier to complete their call, even when the actual rate charged by a competing interexchange carrier was lower than the rates that would be charged by Defendants. Instead, due to Defendants' unlawful bundling practice as described herein, Plaintiff and the class members were all forced to use Defendants' interexchange carrier service to complete their calls or be subjected to a higher fee. Plaintiff and the class members were all deprived of their protections and rights under TOCSIA to be able to competitively select the IXC of their choice without penalty. Plaintiff and members of the Class have all sustained damages arising out of Defendant's conduct in violation of antitrust laws, as complained of herein.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants' billing practices for their Airfone service amounts to an agreement that unlawfully restrained trade in violation of the federal antitrust laws, thereby damaging Plaintiff and members of the class in their property;

(b)     Whether Defendants unlawfully monopolized or attempted to monopolize the interexchange carrier market for air-to-ground telephone service

(c)     Whether Defendants have violated the TOCSIA;

(d)     The duration and extent of any such violations alleged herein;

(e)     Whether, unless enjoined, the unlawful contracts or combination described herein will continue; and

(f)     Whether Defendants' conduct caused injury to the business and property of Plaintiff and the Class and, if so, the proper measure of damages.

57.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

58.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual class members may be relatively small and therefore the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

59.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

60.     The relevant Class Period is August 20, 1998 to the present for Count I, and August 20, 1996 to the present for the remaining counts.

## COUNT I
### (Violation of the 1996 Telecommunications Act, 47 U.S.C. § 151 et seq.)

61.     Plaintiff repeats and realleges each and every allegation as if set forth in full herein.

62.     Defendants are common carriers within the meaning of the Telecommunications Act of 1996.

63.     Defendants have violated the Telecommunications Act by violating the provisions

of the TOCSIA through their improper bundling or tying the airtime and long-distance portion of their charges for Airfone telephone service in the manner described herein-- a practice which the FCC, itself, has labeled as "contraven[ing] the underlying goals of the TOCSIA"-- and whose lawfulness has also been questioned by the FCC.

64.     The conduct described herein has injured consumers like Plaintiff and the Class in that they have been denied a true choice of interexchange carriers for air-to-ground communications as mandated by the TOCSIA and the Telecommunications Act.

65.     Accordingly, under 47 U.S.C. § 207, Plaintiff and the class members have standing to bring this action in this Court to recover the damages sustained by Defendants' unlawful conduct.

## COUNT II
### (Per Se Violation of 15 U.S.C. § 1)

66.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

67.     Defendants, through the offering of their Airfone air-to-ground telephone service, are the market leaders in air-to-ground telephone service.  As such, Defendant's possess significant market power in the air-to-ground telephone communication market.

68.     Moreover, in those aircraft companies where Defendants' Airfone equipment is installed, Defendants own 100 percent of the market share of air-to-ground telephone communications, as no competing air-to-ground telephones are installed in such aircraft.

69.     Defendants' bundle or tie the airtime and long-distance portion of their charges for Airfone telephone service in the manner described herein.

70.     Defendants' bundling or tie prevents consumers using Airfone from obtaining less expensive interexchange carrier service on a competing carrier for their air-to-ground call, even when the competing carrier's rate is lower than the corresponding rate offered by Defendant, and even when these lowered competing rates are properly on file through tariffs filed with the FCC. Instead, as a result of Defendants' bundling or tie, plaintiff and the class members are forced to use Defendants' network and carrier to complete their air-to-ground Airfone call, or are subjected to higher fees.

71.     As noted by the FCC, Defendants bundling/tying practices contravene TOCSIA's provisions which protect consumers' ability to obtain their choice of interexchange carriers in a competitive environment.

72.     In light of the foregoing, Defendants' contracts with Plaintiff and the class members wherein, wherein Defendants bundle or tie the airtime and long-distance portion of their charges are contracts in restraint of trade.

73.     Similarly, Defendants' contracts, agreements, or combinations with the various airlines in which Defendants' Airfone is offered, and pursuant to which Defendants bundle or tie the airtime and long-distance portion of their charges, are contracts in restraint of trade

74.     Given Defendants' market power, their bundling/tying practices amount to a per se violation of 15 U.S.C. § 1.

75.     Plaintiff and the class members have been injured in their property as a direct result of Defendants' unlawful practices, by being deprived a competitive choice of interexchange carriers to complete their Airfone air-to-ground telephone calls and by being forced to pay supra-competitive fees and charges to complete their Airfone air-to-ground telephone calls. Moreover, Plaintiff and the class members have been deprived of the ability to access lower interexchange

carrier rates, even when such lower rates are properly on file through tariffs filed with the FCC.

WHEREFORE, Plaintiff, on behalf of himself and members of the class, demands judgment against Defendants GTE Corp. and GTE Airfone, jointly and severally, for threefold the damages sustained by Plaintiff and the members of the class, together with attorneys' fees, costs, and prejudgment interest, together with injunctive relief enjoining and restraining Defendant's unlawful conduct, and granting such other and further relief as is just and proper.

## COUNT III
### (Violation of 15 U.S.C. § 1 Under the Rule of Reason)

76.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

77.     Any procompetitive effects that may result from Defendants' bundling practice is outweighed by its anticompetitive effects, as is evidence by the FCC's opinion and concern about the lawfulness of Defendants' conduct and the FCC's opinion that Defendants' practice contravenes the protections offered by the TOCSIA.

78.     Defendants' practice, therefore, violates 15 U.S.C. § 1 under the Rule of Reason.

79.     Plaintiff and the class members have been injured in their property as a direct result of Defendants' unlawful practices, by being deprived a competitive choice of interexchange carriers to complete their Airfone air-to-ground telephone calls and by being forced to pay supra-competitive fees and charges to complete their Airfone air-to-ground telephone calls.  Moreover, Plaintiff and the class members have been deprived of the ability to access lower interexchange

carrier rates, even when such lower rates are properly on file through tariffs filed with the FCC.

WHEREFORE, Plaintiff, on behalf of himself and members of the class, demands judgment against Defendants GTE Corp. and GTE Airfone, jointly and severally, for threefold the damages sustained by Plaintiff and the members of the class, together with attorneys' fees, costs, and prejudgment interest, together with injunctive relief enjoining and restraining Defendant's unlawful conduct, and granting such other and further relief as is just and proper.

## COUNT IV
### (Violation of 15 U.S.C. § 2-- Monopolization)

80.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

81.     Defendants possesses monopoly power in the air-to-ground telephone services market, and in the air-to-ground telephone markets for passengers flying in airlines in which Defendants' Airfone is installed.

82.     Defendants have improperly used their monopoly power in the foregoing markets, however acquired, to foreclose competition in the relevant U.S. market for interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls.

83.     Plaintiff and the class members have been injured by Defendants' unlawful monopolization of the relevant market by being denied a competitive choice of interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls and by being forced to pay supra-competitive fees for completing a telephone call using Defendants'

20

Airfone service. Moreover, Plaintiff and the class members have been deprived of the ability to access lower interexchange carrier rates, even when such lower rates are properly on file through tariffs filed with the FCC.

WHEREFORE, Plaintiff, on behalf of himself and members of the class, demands judgment against Defendants GTE Corp. and GTE Airfone, jointly and severally, for threefold the damages sustained by Plaintiff and the members of the class, together with attorneys' fees, costs, and prejudgment interest, together with injunctive relief enjoining and restraining Defendant's unlawful conduct, and granting such other and further relief as is just and proper.

## COUNT V
### (Attempted Monopolization-- Violation of 15 U.S.C. § 2)

84.     Plaintiff hereby incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

85.     Defendants have engaged in the unlawful conduct described herein with the specific intent to monopolize the relevant U.S. market for interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls.

86.     There is a dangerous probability that Defendants will succeed in accomplishing an actual monopoly in the foregoing market if their conduct remains unchecked.

87.     Plaintiff and the class members have been injured by Defendants' unlawful monopolization of the relevant market by being denied a competitive choice of interexchange telephone carrier service for the land portion of interstate air-to-ground telephone calls and by

being forced to pay supra-competitive fees for completing a telephone call using Defendants' Airfone service. Moreover, Plaintiff and the class members have been deprived of the ability to access lower interexchange carrier rates, even when such lower rates are properly on file through tariffs filed with the FCC.

WHEREFORE, Plaintiff, on behalf of himself and members of the class, demands judgment against Defendants GTE Corp. and GTE Airfone, jointly and severally, for threefold the damages sustained by Plaintiff and the members of the class, together with attorneys' fees, costs, and prejudgment interest, together with injunctive relief enjoining and restraining Defendant's unlawful conduct, and granting such other and further relief as is just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for judgment against Defendant as follows:

(a)     That the Court determine that this action may be maintained as a class action and direct that reasonable notice of this action be given to the members of the Class;

(b)     That judgment be entered against Defendants and in favor of Plaintiff and the class members on all counts

(c)     That Defendants be permanently enjoined from continuing in any manner the violations alleged in this Complaint;

(d)     That damages be granted according to proof, and that Plaintiff and the Class be

22

awarded treble damages or statutory damages, where applicable, attorneys' fees, costs and disbursements.

(e)     That Plaintiff and the Class be awarded pre- and post-judgment interest; and

(f)     That Plaintiff and the Class have such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: August 11, 2000            By: _____

Marvin A. Miller
Matthew Van Tine
MILLER FAUCHER, and
        CAFFERTY LLP
30 North LaSalle Street, Suite 3200
Chicago, IL 60602
(312) 782-4880

and

Bryan L. Clobes
MILLER FAUCHER and
        CAFFERTY LLP
30 S. 15th St.
Suite 2500
Philadelphia, PA 19102
(215) 864-2800

23

_Burton H. Finkelstein/mbs_

Burton H. Finkelstein
Douglas G. Thompson
Roy A. Katriel
FINKELSTEIN, THOMPSON &
    LOUGHRAN
1055 Thomas Jefferson Street, NW
Suite 601
Washington, DC   20007
(202) 337-8000


_Lawrence A. Sucharow/mbs_

Lawrence A. Sucharow
Bernard Persky
GOODKIND LABATON RUDOFF &
    SUCHAROW LLP
100 Park Ave.
New York, NY 10017
(212) 907-0700


_Nicholas E. Chimicles/mbs_

Nicholas E. Chimicles
Steven A. Schwartz
CHIMICLES & TIKELLIS
One Haverford Centre
361 West Lancaster Ave.
Haverford, PA 19041
(610) 642-8500

EXHIBIT 1

Service: LEXSEE®
Citation: 8 FCCRCD 6171

8 FCC Rcd 6171, *; 1993 FCC LEXIS 4420, **

In the Matter of PETITION FOR A DECLARATORY RULING THAT GTE AIRFONE, GTE RAILFONE, AND GTE MOBILNET ARE NOT SUBJECT TO THE TELEPHONE OPERATOR CONSUMER SERVICES IMPROVEMENT ACT OF 1990

Report No. MSD-92-14

FEDERAL COMMUNICATIONS COMMISSION

8 FCC Rcd 6171; 1993 FCC LEXIS 4420; 73 Rad. Reg. 2d (P & F) 1249

**RELEASE-NUMBER:** DA 93-1022

August 27, 1993 Released; Adopted August 18, 1993; Comment Date October 12, 1993; Reply Date October 27, 1993

**ACTION:** [**1]

DECLARATORY RULING

**JUDGES:**
By the Acting Chief, Common Carrier Bureau

**OPINIONBY:** LEVITZ

**OPINION:**
[*6171] INTRODUCTION

1. The Common Carrier Bureau has before it a Petition for Declaratory Ruling filed by GTE Service Corporation (GTE) on behalf of GTE Airfone Incorporated (Airfone), GTE Railfone Incorporated (Railfone), and GTE Mobilnet Incorporated (Mobilnet) n1 (collectively GTE subsidiaries), asking that none of the GTE subsidiaries be considered subject to the requirements of the Telephone Operator Consumer Services Improvement Act of 1990 (TOCSIA). n2 On March 17, 1992, we issued a Public Notice requesting interested parties to file comments in response. n3 Seven comments and five reply comments were received. n4

n1 All references to Mobilnet herein refer only to GTE's subsidiary which provides cellular credit card activated telephones in rental cars. GTE is also a cellular licensee in a number of cellular markets and operates under the name GTE Mobilnet in these markets. Our ruling does not pertain to GTE's cellular licenses per se.

n2 47 U.S.C. § 226 (1990).

n3 See Public Notice, Mimeo No. 22280, Mar. 17, 1992. We issued a subsequent Public Notice amending the comment filing dates. See Public Notice, Mimeo No. 22316, Mar. 19, 1992.

n4 See Appendix. To the extent commenting parties are seeking a ruling broader than that sought by GTE, their pleadings are also being treated as petitions for declaratory ruling and are addressed by this ruling. [**2]

II. BACKGROUND

2. In October 1990, Congress enacted TOCSIA "to protect consumers who make interstate

operator services calls from pay telephones, hotels, and other public locations against unreasonably high rates and anticompetitive practices." n5 Congress noted that in recent years a number of operator services companies have emerged. These operator services providers (OSPs) compete with local exchange and long distance carriers by providing telephones to the general public. n6 When a caller dials an operator assisted sequence from a telephone served by one of these OSPs the call is routed automatically to the OSP. n7 The OSP provides the desired operator services to facilitate completion of the call.

n5 S. Rep. No. 439, 101st Cong., 2d Sess. at 1 (1990); see also H.R. Rep. No. 213, 101st Cong., 1st Sess. at 2. (1989) ("the purpose of [the Act] is to protect telephone consumers against unfair process and practices of some operator service providers (OSPs), yet allow the legitimate companies in the industry the opportunity to compete in the market.") "Operator services" include collect or person-to-person calls, calls billed to a third number, and calls billed to a calling card or credit card. These services may be provided by an automated device as well as by a live operator. S. Rep. No. 439, 101st Cong., 2d Sess. at n.1.

n6 See id. at 2.

n7 All credit card calls are considered "operator assisted" whether the customer utilizes a live operator or not. [**3]

3. Congress was addressing two main concerns in enacting TOCSIA -- ensuring that consumers are aware of the identity of the pre-subscribed operator service provider, and guaranteeing that callers are able to employ the carrier of their choice in placing operator-assisted calls. Congress directed the Commission to prescribe rules that assure that the objectives of TOCSIA are met. n8 In 1991, the Commission adopted the rules and regulations pertaining to operator service providers mandated by Congress. n9

n8 On June 14, 1990, the Commission issued its initial Notice of Proposed Rulemaking. See Notice of Proposed Rulemaking, Policies and Rules Concerning Operator Service Providers, CC Docket No. 90-313, 5 FCC Rcd 4630 (1990) (NPRM). On December 21, 1990, the Commission issued a Further Notice of Proposed Rulemaking in the same proceeding. See Further Notice of Proposed Rulemaking, 6 FCC Rcd 120 (1990) (FNPRM). We note that while GTE filed comments generally in support of the above proceeding on September 7, 1990, GTE did not mention any of its subsidiaries which are at issue in the current proceeding.

n9 See Policies and Rules Concerning Operator Service Providers, Report and Order, CC Docket No. 90-313, 6 FCC Rcd 2744 (1991) (Report and Order), recon., 7 FCC Rcd 3882 (1992). See also Policies and Rules Concerning Operator Service Access and Pay Telephone Compensation, CC Docket No. 91-35, Report and Order and Further Notice of Proposed Rule Making, 6 FCC Rcd 4736 (1991), Second Report and Order, 7 FCC Rcd 3251 (1992), recon., 7 FCC Rcd 4355 (1992). [**4]

4. A telecommunications service is covered by the Commission's operator service rules if the service includes any automatic or live operator assistance to the caller to arrange for billing or completion of an interstate call through a method other than (1) automatic completion with billing to the telephone from which the call originated, or (2) completion through an access code used by the consumer, with billing to an account previously established with the carrier by the consumer. n10 There are two [*6172] categories of rules adopted pursuant to TOCSIA -- rules which are applicable to aggregators n11 and rules which are applicable to operator service providers (OSPs). n12

n10 See 47 C.F.R. § 64.708(g).

n11 The term "aggregator" is defined in paragraph (b) of Section 64.708 of the Commission's Rules as follows: "[A]ny person that, in the ordinary course of its operations, makes telephones available to the public or to transient users of its premises, for interstate telephone

calls using a provider of operator services." 47 C.F.R. § 64.708(b); see also 47 U.S.C. § 226(a)(2).

n12 For the purposes of these requirements, an OSP is a provider of:

any interstate telecommunications service initiated from an aggregator location that includes, as a component, any automatic or live assistance to a consumer to arrange for billing or completion, or both, of an interstate telephone call through a method other than --

(A) automatic completion with billing to the telephone from which the call originated; or

(B) completion through an access code used by the consumer, with billing to an account previously established with the carrier by the consumer.

47 C.F.R. §§ 64.708(g), 64.708(i): 47 U.S.C. §§ 226(a)(7), 226(a)(9). The Commission has noted that this definition of OSP may not be appropriate for purposes other than identifying which carriers are subject to the OSP requirements of TOCSIA. For instance, the Commission has stated that Congress may not have intended the access code exclusion to apply to the definition of an OSP for compensation purposes. See Policies and Rules Concerning Operator Service Access and Pay Telephone Compensation, Second Report and Order, supra, at 3261. [**5]

5. Pursuant to the Commission's Rules adopted under TOCSIA, an aggregator is required to post certain information on or near the telephone. n13 The aggregator must also ensure that its telephones do not block the access codes to other than the presubscribed OSP so consumers have the ability to utilize other providers of operator services. Finally, the aggregator must ensure that no charge by the aggregator to the consumer for using an access code to another OSP is greater than for calls placed using the presubscribed OSP. n14 The Commission stated that any entity which exercises control over the telephone, whether through ownership of the equipment or control of access to the equipment, will be responsible as an aggregator under the Act and our Rules. n15 Accordingly, there will be instances where the premises owner and the equipment owner will share responsibility as aggregators.

n13 The information the aggregator must post is as follows:

(i) the name, address, and toll-free telephone number of the [presubscribed] provider of operator services:

(ii) a written disclosure that the rates for all operator-assisted calls are available upon request, and that consumers have a right to obtain access to the interstate common carrier of their choice and may contact their preferred interstate common carriers for information on accessing that carrier's service using that telephone; and

(iii) the name and address of the Enforcement Division of the Common Carrier Bureau of the Commission, to which the consumer may direct complaints regarding operator services.

47 C.F.R. § 64.703(b); 47 U.S.C. § 226(c)(1)(A).

n14 See 47 C.F.R. §§ 64.703(b), 64.704(a), (c) and 64.705(b); see also, 47 U.S.C. §§ 226(c)(1)(A), (B), and (C).

n15 See Report and Order, 6 FCC Rcd at 2751. [**6]

6. An OSP, on the other hand, is required to double brand calls, n16 to permit the consumer to terminate the call at no charge before the call is connected and to disclose certain information to the customer at no charge. n17 The OSP must also ensure that the aggregator is in compliance with the aggregator provisions and withhold payment if the aggregator is blocking

access codes. The OSP may not bill for unanswered calls, engage in call splashing, n18 or bill for a call that does not reflect the location of the origination of the call. n19 It is possible for an entity to be both an aggregator and an OSP and therefore subject to the requirements for both.

n16 Call branding "is the process by which an OSP audibly and distinctly identifies itself to every person who uses its operator services." NPRM, 5 FCC Rcd at 4632. The OSP is required to brand the call at the beginning of each call and again before the customer incurs any charge for the call. See 47 C.F.R. §§ 64.703(a), 64.703(c); 47 U.S.C. § 226(b)(1)(A).

n17 The information which the OSP must furnish to the customer upon request is:

(i) a quote of its rates or charges for the call;

(ii) the methods by which such rates or charges will be collected; and

(iii) the methods by which complaints concerning such rates, charges, or collection practices will be resolved.

47 U.S.C. § 226(b)(1)(C).

n18 "Call splashing" refers to the transfer of a telephone call from one provider of operator services to another where the second provider is unable to determine the location of the originating call and is prevented from billing the call on the basis of such location. See 47 C.F.R. § 64.708(c); 47 U.S.C. § 226(a)(3). Example:

A consumer in a hotel in Washington, D.C., wishes to place a call using a calling card from his chosen IXC to Baltimore, Maryland. The presubscribed OSP for that hotel is based in Chicago. The OSP is unable to accept the calling card, so the caller asks the OSP to transfer the call to an operator of his or her chosen IXC. The operator of the consumer's carrier of choice is unaware that the call is originating in Washington and believes that the call is originating in Chicago. The customer is, therefore, billed for a call from Chicago to Baltimore, rather than from Washington to Baltimore.

Call splashing is allowed when the consumer requests to be transferred to another OSP, the consumer is notified in advance that the rates for the call may not reflect the rates from the actual originating location of the call, and the consumer thereafter consents to be transferred. See 47 C.F.R. § 64.705(a)(3); 47 U.S.C. § 226(b)(1)(H).

n19 See 47 C.F.R. §§ 64.703(a)(1)-(3), 64.704(b), and 64.705(a)(1)-(5); see also 47 U.S.C. §§ 226(b)(1)(A)-(1). [**7]

7. On November 13, 1992, the Commission submitted its Final Report to Congress regarding TOCSIA. n20 The Commission stated in this report that:

[*6173] (1) The statutory objectives of TOCSIA are being achieved. Consumers are being protected from unfair and deceptive practices relating to their use of operator services to place interstate telephone calls. Further, consumers have an opportunity to make informed choices in making such calls.

n20 Pursuant to the requirements of TOCSIA, the Commission was to file three reports with Congress. On May 14, 1991, the Commission submitted its First Report; on Novembere 14, 1991, the Commission submitted its Second Report.

(2) Market forces are securing just and reasonable rates.

Final Report at 1. The Commission detailed the factual findings in its report which led to the

conclusions stated above. Additionally, the Commission stated that it believes it has a continuing duty to ensure that all of the problems that prompted Congress to adopt TOCSIA have been solved.

III. GTE's PETITION

8. GTE asks for a declaratory ruling that the types of communications services provided by the GTE subsidiaries are not subject to the requirements of [**8] TOCSIA. GTE expresses concern that application of TOCSIA to Airfone, Railfone, and Mobilnet may adversely affect the continued development of air-to-ground (ATG) and cellular credit card services, to the detriment of the public.

9. The GTE subsidiaries offer three different types of mobile telecommunications services. Airfone is a Commission licensee which provides telephone service to passengers of commercial and private aircraft. n21 Airfone owns and operates the radio and passenger handset equipment installed on airplanes. Airfone also owns and operates nearly 100 base stations that are used to establish a communications link between aircraft equipment and the ground. From the ground station, calls are routed through Airfone's private network or through the public switched network. Customers are charged an initial activation fee and a time sensitive usage fee. Customers are not charged separately for the land-based portion of long-distance calls.

n21 There are five other entities licensed by the Commission to provide 800 MHz Air-Ground telephone service.

10. Railfone provides telephone service to passengers of certain rail lines. Railfone is a cellular and long [**9] distance reseller, not a Commission licensee, and provides credit card cellular pay telephone service on trains. The charge for the call is, like that of Airfone, time-sensitive and billed on a per-minute basis only. Long distance service is not charged separately to the customer. Mobilnet is also a provider of credit card cellular telephone service providing service through cellular resale. Through agreements with rental car providers, Mobilnet installs its credit card activated cellular telephones in rental cars. If the caller makes a long distance call using an interexchange carrier (IXC) of his or her own choosing, the charges for the long distance portion are billed separately and directly by the IXC. Both Railfone and Mobilnet are resellers of cellular service and the underlying facilities based cellular carrier is not necessarily controlled by GTE. Railfone and Mobilnet, therefore, do not provide direct interconnection to the public switched network. The interconnection is provided by the underlying facilities based cellular licensee.

11. In its petition, GTE argues that the definitions in TOCSIA refer to fixed, rather than mobile, locations. Specifically, GTE argues [**10] that an aggregator is defined as one who makes phones available to transient users of its premises and an OSP is defined as one who provides operator services from an aggregator location. According to GTE, "premises" and "location" refer to a fixed point. Airplanes, railroad trains and rental cars, argues GTE, do not constitute fixed points and are not, therefore, premises or locations under TOCSIA. GTE additionally argues that certain of the requirements of TOCSIA are impossible for its subsidiaries to comply with for technical reasons. GTE asserts that the legislative history of TOCSIA demonstrates that the problems TOCSIA was designed to prevent do not exist with the services offered by the GTE subsidiaries.

IV. COMMENTS AND REPLY COMMENTS

12. Several commenters support GTE's position, but suggest the Commission go further than just declaring TOCSIA inapplicable to the GTE subsidiaries. For example, In-Flight Phone Corporation (In-Flight), another ATG service provider and Commission licensee, urges the Commission to extend its ruling on GTE's petition to exempt all 800 MHz Air-Ground Telephone Service licensees from the rules adopted pursuant to TOCSIA. McCaw Cellular [**11]

Communications, Inc. (McCaw) and PhoneTel Technologies, Inc. (PhoneTel) argue that all mobile services should be exempt. Cellular, Inc. (CI), for its part, suggests that the Commission declare that no cellular pay telephones are subject to Commission regulation under TOCSIA.

13. Other commenters argue, in addition to supporting GTE's petition, that the particular services which they provide should also be exempt. For example, Waterway Communications System, Inc. (Waterway), Commission licensee of an Automated Maritime Telecommunications System (AMTS) located along the Mississippi, Illinois, and Ohio Rivers and Gulf Intracoastal Waterway, contends that the shipboard telephone service on river cruise boats and harbor cruise or dinner cruise boats it provides should be exempt from the requirements of TOCSIA. Similarly, Petroleum Communications, Inc. (Petrocom), Commission licensee of the Domestic Public Cellular Radio Telecommunications Service system on frequency Block A in the Gulf of Mexico Service Area, maintains that the cellular pay telephone service it provides for the oil industry employees who work on various drilling rigs, production platforms, and marine vessels in the [**12] Gulf should be exempt.

14. American Telephone and Telegraph Company (AT&T) and MCI Telecommunications Corporation (MCI) opposed GTE's petition. AT&T argues that the GTE subsidiaries' service arrangements fall within the scope of TOCSIA. MCI agrees, stating that "it seems clear that the GTE companies are providing operator services at aggregator locations and, therefore, are subject to the requirements of TOCSIA." n22

n22 MCI Comments at 3. MCI suggests that the Commission waive any provision of the Commission's Rules with which GTE's subsidiaries cannot comply for technical reasons, instead of granting a wholesale exemption from TOCSIA. We, note, however, that the provisions for the rules under TOCSIA are statutory and the Commission has limited discretion to waive any of the provisions.

[*6174] V. DISCUSSION

A. GTE Subsidiaries

15. As stated previously, there exist two categories of rules adopted under TOCSIA -- rules that apply to aggregators and rules that apply to OSPs. Our discussion, therefore, begins with an analysis of whether the GTE subsidiaries can be considered aggregators under our rules and then turns to whether the GTE subsidiaries can be considered OSPs. [**13]

16. We have reviewed GTE's petition and the comments and reply comments and we determine that Airfone, Railfone, and Mobilnet are aggregators within the meaning of TOCSIA. The statutory definition of aggregator is clear and unambiguous. The GTE subsidiaries all, "in the ordinary course of [their] operations, make [] telephones available to the public or to transient users of [their] premises, for interstate telephone calls." n23 We find no support in the statutory language or legislative history of TOCSIA for the limited definition of "premises" and "location" proffered by GTE. GTE argues that the definition of premises refers to a fixed point and not a mobile site such as an airplane, train, or rental car. We do not believe that such a narrow definition of "premises" serves the purpose of the rule or the underlying statute. GTE also argues that Congress only intended TOCSIA to apply to telephones made available in "hotels, universities, and other public locations." n24 GTE asserts that airplanes, trains, and rental cars are not "locations" because such vehicles are mobile. We conclude, however, that airplanes, trains, and rental cars can reasonably be considered "locations" [**14] despite the fact that they are mobile. The Commission specifically stated in the Report and Order establishing our TOCSIA rules that it "will interpret the definition [of aggregator] broadly enough to ensure compliance with the goals of our rules and the Act." n25

n23 See 47 C.F.R. § 64.708(b); 47 U.S.C. § 226(a)(2).

n24 S. Rep. No. 439, 101st Cong., 2d Sess. at 2, 5.

n25 Report and Order, 6 FCC Rcd at 2751.

17. Moreover, the statute applies not only to telephones made available to transient users of the aggregator's premises, but also to telephones made available to the public. The telephones offered by the GTE subsidiaries are available to the public. n26 This is not a situation in which the telephones are made available by "establishments such as law firms or corporations . . . solely for the convenience of their customers," which Congress stated would be exempt from the rules under TOCSIA. n27 The telephone service provided for the convenience of customers referred to by Congress are courtesy telephones. The telephones provided by the GTE subsidiaries are not courtesy telephones because the consumer, not the telephone provider, pays for the cost of the call. Because [**15] the telephones provided by the GTE subsidiaries fall within the statutory definition of aggregator telephones, the GTE subsidiaries must comply with the aggregator rules. Therefore, GTE's petition must be denied in so far as the aggregator rules of TOCSIA are concerned. n28

n26 While it is true that the telephones offered by Airfone and Railfone are only available to ticketed passengers and the telephones offered by Mobilnet are only available to automobile rental agreement holders, we believe that the telephones are nonetheless available to the public. This situation is analogous to the payphones available inside airport terminals which are only available to ticketed passengers who have cleared security. Although these payphones are only available to ticketed passengers as well, the mandates of TOCSIA apply.

n27 See S. Rep. No. 439, 101st Cong., 2d Sess. at 10.

n28 We note also that the airlines, railroad carriers, and car rental agencies which have GTE telephones installed in their vehicles are aggregators under our rules because they are providing the use of the telephones to transient users and members of the public, their customers.

18. Having ruled that Airfone, [**16] Railfone, and Mobilnet are aggregators under our rules, we now turn to whether the GTE subsidiaries are OSPs under the rules. An OSP, as discussed above, is a provider of interstate telecommunications service initiated from an aggregator location that includes automatic or live assistance for billing or call completion. n29 Airfone does provide this type of service. Airfone not only provides a radio link between the airplane and ground base station, but also interconnects directly to the interstate switched network. Because Airfone's telephones are activated by credit cards, Airfone provides automatic assistance for billing purposes. n30 Accordingly, we find Airfone to be an OSP under our rules that must comply with the OSP rules of TOCSIA.

n29 See 47 C.F.R. § 64.708(g); 47 U.S.C. § 226(a)(7).

n30 Additionally, Airfone provides its own live operators to assist customers.

19. The concerns expressed by GTE about its inability to comply with various TOSCIA rules are misplaced. For instance, GTE maintains that Airfone cannot comply with the call splashing prohibition of Section 64.705(a)(3) of the Rules. GTE argues that because it is impossible to determine the precise location [**17] where the call was placed it cannot comply with Section 64.705. Currently, if a customer using Airfone chose to use his or her own IXC, the location on the bill would reflect the location of the intercepting ground station and not the actual location of the airplane at the time the call was placed. n31 Airfone is currently converting to a second-generation system that will route all calls from the receiving ground station to one of two switching centers and the location of the call would, therefore, reflect one of these two switching centers in the future.

n31 There is no practical method to determine from the airplane in every case which base

station will pick up a call when it is placed.

20. However, Section 64.705(a)(3) allows splashing when the customer requests to be transferred to another provider of operator services, the customer is informed that the rates for the call may not reflect the actual originating location of the call, and the customer consents to the transfer. Accordingly, Airfone informs customers in the posting of its rates that they can select the IXC to carry their call, but that the rates charged by that IXC may reflect an originating location other  [**18]  than the plane's actual location, then a customer could choose to use his or her own IXC by consenting to the transfer and the splashing would be allowed. n32

n32 We note that Airfone now bundles the airtime and long distance portion of its rates. This bundling would apparently allow Airfone to charge the same rate to the customer regardless of whether the customer chooses his or her own IXC. Under this scenario, if a customer were to choose his or her own IXC, he or she would be billed Airfone's bundled rate and also billed by the chosen IXC, thereby incurring a higher overall charge. This practice contravenes the underlying goal of TOCSIA which allows callers to choose the IXC offering the best rate and to pay that rate. While we have serious concerns about the lawfulness of this practice, this issue is not within the purview of this Order.

 [*6175]  21. Both Railfone and Mobilnet only provide radio links to a facilities based cellular carrier. The underlying cellular carrier that provides the operator service interconnects directly to the interstate public switched network. Therefore, we find that Railfone and Mobilnet are not OSPs under our rules. Rather, the cellular carriers  [**19]  that connect the calls from Railfone and Mobilnet to the switched network are the OSPs for the services provided. For this reason, GTE's concern that it cannot brand calls on Railfone and Mobilnet because it does not control the cellular switch which receives the calls is misplaced. The call branding requirement is a regulation imposed upon the OSPs. Because Railfone and Mobilnet are only aggregators under our rules, Railfone and Mobilnet do not need to comply with the OSP requirements. n33

n33 The facilities based cellular carrier which intercepts Railfone's or Mobilnet's calls, however, is an OSP under the Commission's rules. Therefore, the cellular licensee will be required to comply with the OSP rules adopted pursuant to TOCSIA.

22. Likewise, because our ruling that the telephones provided by Airfone fall within the aggregator provision of our rules. In-Flight's petition to exempt all ATG licensees from TOCSIA must be denied in so far as the aggregator rules are concerned. Accordingly, we extend our ruling that Airfone must comply with the aggregator rules to all ATG licensees. Likewise, our ruling that Airfone is an OSP under the Rules extends to all ATG carriers.  [**20]  Therefore, all the ATG licensees are to comply with the OSP requirements as well as the aggregator requirements of TOCSIA. Accordingly, In-Flight's request that all ATG licensees be exempt from the requirements of TOCSIA is denied.

B. Waterway

23. We also find that Waterway's AMTS services is not exempt from either the aggregator or OSP requirements of TOCSIA. Waterway provides telephones on river cruise boats and harbor cruise or dinner boats. These telephones are available for interstate telephone calls by the public and by transient users of the premises of the boat. Waterway is therefore an aggregator under our rules. Waterway argues that the call blocking prohibition has no application to it because the radio link provided by Waterway from the ship to the shore base station is the only manner in which a customer could obtain a radio link needed for a call. Therefore, argues Waterway, the customer can not avoid using Waterway's services in order to place a call. Waterway, however, has misconstrued the call blocking prohibition. While it is true that a customer must use Waterway to establish a radio link with the shore, the customer does not have to accept the presubscribed  [**21]  IXC that connects the call from the shore base station to its terminating point. Therefore, after the link with the shore has been established,

Waterway may not block access to the IXC of the customer's choosing. n34 Consumers must be allowed to use the long distance carrier of their choice. Accordingly, Waterway's request that its AMTS services offered to customers on river and harbor cruise boats be exempt from the aggregator requirements of TOCSIA is denied. n35

n34 Like Airfone, Waterway has bundled its airtime and long distance charges. A customer using Waterway will apparently incur a higher total charge for a call if he or she chooses his or her own carrier. As we said with respect to Airfone, we have serious concerns about the reasonableness of this practice. See note 32, supra. However, the legality of Waterway's tariff is not within the scope of this proceeding. We only decide here that Waterway is subject to the requirements of TOCSIA.

n35 Moreover, the river boat and harbor and dinner cruise boat companies which have allowed the installation of Waterway telephones on their vessels are also aggregators under our rules.

24. Waterway, like Airfone, offers more  [**22]  than a radio link to a receiving station. Waterway is the provider of an operator service offering interconnection to the switched network. Waterway furnishes both live operator assistance and automatic connection. Waterway, therefore offers interstate telecommunications service from an aggregator location using an automatic or live operator for billing and call completion. Accordingly, Waterway is an OSP under our rules, n36 and is therefore required to comply also with the OSP rules of TOCSIA. n37

n36 Waterway does not dispute the fact that it is an OSP in its comments. Instead, Waterway simply requests that any exemption given to the GTE subsidiaries also be extended to AMTS service.

n37 To avoid violating the call splashing requirements of our rules (Section 64.705(a)(3)), Waterway must, in the posting of its rates, inform customers that if they choose their own IXC, the billing location reflected on the resulting long distance bill will be the location of the receiving switch and not the location of the ship. If the customer elects to be transferred to an IXC other than the presubscribed IXC after being informed of this the customer will have consented to the transfer. Therefore, even though the location of the call on a long distance portion of the bill would reflect the receiving shore station and not the actual origination of the call, the splashing is allowed because the customer consented. See 47 C.F.R. § 64.705(a)(3). [**23]

C. Petrocom

25. Petrocom, as the licensee of cellular frequency Block A in the Gulf of Mexico, provides pay telephone service to oil industry employees, who typically work two-week shifts, on drilling rigs, production platforms, and marine vessels. Petrocom states that none of its telephones is in a public location. Rather, its cellular telephones are in areas accessible only with the permission of the oil company owners. We find, however, that Petrocom is an aggregator under TOCSIA. While the oil platforms may not be public, and despite the length of their shifts, which requires the oil industry employees to take temporary residence off shore, the users of Petrocom's telephones are "transient users of [the oil company's] premises." n38 Petrocom, therefore, fits within the definition of an aggregator. n39 The work shifts of the oil industry employees are of a duration that makes the  [*6176]  employees "transient." n40 We believe that the dual concerns of Congress that consumers are aware of the pre-subscribed operator service provider and that the consumer have the opportunity to employ the carrier of his or her choice are present here. Petrocom has failed to demonstrate any basis  [**24]  for it not being considered an aggregator under our rules. Accordingly, we are denying Petrocom's request and Petrocom must, therefore, comply with the aggregator requirements of our rules. n41

n38 See 47 C.F.R. § 64.708(b); 47 U.S.C. § 226(a)(2).

n39 Petrocom likens its situation to that of a telephone made available by "establishments such as law firms or corporations . . . solely for the convenience of their customers," which is exempt from TOCSIA. See S. Rep. No. 439, 101st Cong., 2d Sess. at 10. As stated previously, this type of telephone is a courtesy telephone. The telephones offered by Petrocom are not courtesy telephones because the cost of the call is borne by the customer and not the telephone provider. See P17, supra.

n40 See e.g., Report and Order, 6 FCC Rcd at 2752, n.31. (University housing which is other than a typical apartment building is covered under the definition of TOCSIA).

n41 The oil companies with Petrocom telephones installed on their drilling rigs, production platforms, and marine vessels are also aggregators under the Commission's rules.

26. Further, the service offered by Petrocom is an interstate telephone service that originates from [**25] an aggregator location, and includes automatic or live assistance for billing and call completion purposes. Petrocom offers cellular radio telephone service from the Gulf of Mexico to the shore and connection with the public switched network. Petrocom is, therefore, an OSP under our rules. Accordingly, we deny Petrocom's request for an exemption from the rules established pursuant to TOCSIA and rule that Petrocom must also comply with the OSP requirements of our rules.

27. Petrocom argues that applying the aggregator rules to its cellular service in the Gulf could force it to discontinue service. Petrocom states that if it failed to block access codes, its customers would avoid airtime charges by placing calls with their selected IXCs. Petrocom asserts that the large IXCs will not bill and collect cellular airtime charges in connection with their provision of OSP services. Petrocom argues that without compensation for the cellular airtime on its cellular pay telephones it will not be able to afford to continue service in the Gulf of Mexico.

28. The issue of compensation for competitive private pay telephone owners has been addressed by the Commission, and Petrocom participated [**26] in these proceedings. In the Commission's Second Report and Order in CC Docket 91-35, n42 the Commission stated that the question of whether companies such as Petrocom are aggregators and thus would be required to unblock access to the IXCs of the customer's choice was at that time unresolved. n43 The Commission, therefore, did not rule on the issue of compensation to Petrocom. However, based on the record here, it appears that once Petrocom unblocks access from its phones, it will not be able to collect airtime charges. n44 Thus, we tentatively conclude that Petrocom is entitled to compensation, but we lack sufficient information to determine the exact level of compensation. Therefore, we order Petrocom to provide additional information on the level of compensation to which it believes it is entitled within 20 days of the release of this Order. n45 We further invite any interested party wishing to comment on either our tentative conclusion that Petrocom is entitled to compensation or on the amount Petrocom should be compensated to file comments within 45 days of the release of this Order. Reply comments will be due 60 days after the release of this Order.

n42 Policies and Rules Concerning Operator Access and Pay Telephone Compensation, Second Report and Order, 7 FCC Rcd 3251 (1992)

n43 The Commission referenced the instant petition for declaratory ruling filed by GTE. See Second Report and Order, 7 FCC Rcd at n.103.

n44 Apparently the issue of compensation does not arise for the GTE subsidiaries or for Waterway because these entities use credit card activated telephones that enable GTE and Waterway to obtain billing information independent of the IXC used by the customer. Therefore, GTE and Waterway are able to bill the customer for the airtime and the IXC bills separately for the long distance portion of the call.

n45 Any other mobile telecommunications carrier affected by this Order that believes it may be entitled to compensation as result of being covered by the requirements of TOCSIA also should file comments within 45 days of the release of this Order. Based on the record in this proceeding, however, we do not conclude that any other mobile telecommunications carrier is entitled to compensation. [**27]

D. Other Commenters

29. We also deny the broad ruling sought by McCaw and PhoneTel to exempt all mobile telephones from our TOCSIA rules. McCaw and PhoneTel advance the same argument as GTE that "premises" does not apply to mobile telephones, an argument we have already rejected. Accordingly, we rule that the provider of any mobile telephone made available for interstate telephone calls either to the public, or to transient users of the mobile premises, must comply with the aggregator rules of TOCSIA. For the same reasons, we deny CI's request to exempt all cellular pay telephones from the requirements of TOCSIA. Any entity providing cellular telephones for interstate calls to the public or to transient users of the premises in which the cellular telephones are installed must comply with the Commission's aggregator rules.

30. The comments filed by McCaw, PhoneTel, and CI do not describe any specific service to the degree necessary to make a determination whether other mobile or cellular telephone service providers are OSPs under the Rules. The comments filed by these parties speak only in general terms about exempting all mobile and cellular telephones from the requirements [**28] of TOCSIA. If, however, the service provider, such as McCaw, PhoneTel, or CI, provides interstate telecommunications service from an aggregator location that includes automatic or live assistance for billing or call completion without billing to the telephone from which the call was placed or without an access code or previously established billing account, then the service provider must comply with the OSP requirements for that service.

IV. CONCLUSION AND ORDERING CLAUSES

31. In conclusion, we find that TOCSIA is clear in its terms. The statute mandates that the Commission regulate as an aggregator any entity that makes telephones available to the public or to transient users of its premises and that we regulate as an OSP any entity that provides interstate telecommunications service initiated from an aggregator location that includes automatic or live assistance to arrange for billing or call completion. We find that the GTE subsidiaries, as well as all ATG carriers, Waterway, and Petrocom provide services which make them aggregators. Furthermore, we find that Airfone, as well as all ATG carriers, Waterway, and Petrocom provide services which make them OSPs. The statute [**29] requires that the petitioners [*6177] and commenters must comply with the requirements of TOCSIA. n46 Accordingly, we deny the petition for declaratory ruling and other requests for exemptions of TOCSIA.

n46 Those only providing telephones without providing interstate operator service are only subject to the aggregator requirements.

32. IT IS THEREFORE ORDERED that the Petition for a Declaratory Ruling filed by GTE Service Corporation that GTE Airfone Incorporated, GTE Railfone Incorporated, and GTE Mobilnet Incorporated to be exempt from the requirements of the Telephone Operator Consumer Services Improvement Act of 1990 IS HEREBY DENIED.

33. IT IS FURTHER ORDERED that the requests of Waterway Communications System, Inc. and Petroleum Communications, Inc. for an exemption from the requirements of the Telephone Operator Consumer Services Improvement Act of 1990 ARE HEREBY DENIED.

34. IT IS FURTHER ORDERED that the declaratory rulings filed by In-Flight Phone Corporation, McCaw Cellular Communications, Inc., PhoneTel Technologies, Inc., and Cellular, Inc., for

broad exemptions from the requirements of the Telephone Operators Consumer Services Improvement Act of 1990 ARE HEREBY DENIED. [**30]

35. IT IS FURTHER ORDERED that Petroleum Communications, Inc. SHALL FILE additional information within 20 days of the release of this Order demonstrating the level of compensation to which it believes it is entitled.

36. IT IS FURTHER ORDERED that parties wishing to comment on either the tentative conclusion that Petrocom is entitled to compensation, or on Petrocom's comments concerning the amount that Petrocom should be compensated shall file comments by October 12, 1993. Reply comments shall be filed by October 27, 1993.

FEDERAL COMMUNICATIONS COMMISSION

Kathleen B. Levitz

Acting Chief, Common Carrier Bureau

**APPENDIX:** APPENDIX A

PARTIES FILING COMMENTS

American Telegraph and Telephone
Bell Atlantic Telephone Companies n47

n47 The Bell Telephone Company of Pennsylvania, the four Chesapeake and Potomac Telephone Companies, the Diamond State Telephone Company, and New Jersey Bell Telephone Company.
Cellular, Inc.
Inflight Phone Corporation
MCI Telecommunications Corporation
Petroleum Communications, Inc.
Waterway Communications System, Inc.

PARTIES FILING REPLY COMMENTS

MCI Telecommunications Corporation
GTE Service Corporation
McCaw Cellular Communications, [**31] Inc.
PhoneTel Technologies, Inc.
Waterway Communications System, Inc.

Service: **LEXSEE®**
Citation: **8 FCCRCD 6171**
View: Full
Date/Time: Tuesday, April 25, 2000 - 3:55 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group. All rights reserved.

Case: 1:00-cv-05062 Document #: 1 Filed: 08/17/00 Page 38 of 42 PageID #:38

JS 44
(Rev. 07/89)

*Cut 1* **CIVIL COVER SHEET**



The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or ~~other~~ ~~required by law, except as provided by local~~ rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of ~~the~~ ~~the purpose of initiating the civil docket~~ sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

CHRISTINE CROWLEY, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED

**DEFENDANTS**

GTE AIRFONE, INC., GTE CORPORATION

**JUDGE CONLON**                                          *Cook*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Fairfax, VA___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

MARVIN A. MILLER
MILLER FAUCHER and CAFFERTY LLP
30 N. LaSalle St., Suite 3200
Chicago, IL 60602 (312) 782-4880

ATTORNEYS (IF KNOWN)   **MAGISTRATE JUDGE SCHENKIER**

**DOCKETED**

AUG 1 8 2000

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Violations of the Telecommunications Act of 1996 pursuant to
47 U.S.C. Sections 207 and 28 U.S.C. Section 1331

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R.& Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

Appeal to District
☐ 7 Judge from
Magistrate
Judgment

Transferred from

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 another district
(specify)

☐ 6 Multidistrict
Litigation

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☒ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

## VIII. REMARKS

In response to
General Rule 2.21D(2)

☐ is not a refiling of a previously dismissed action
this case ☐ is a refiling of case number _____ of Judge _____

DATE    8/17/00

SIGNATURE OF ATTORNEY OF RECORD

**UNITED STATES DISTRICT COURT**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



CROWLEY
vs.

In the Matter of

GTE AIRFONE



DOCKETED
AUG 1 8 2000

Case Number:

JUDGE CONLON

MAGISTRATE JUDGE SCHENKIER

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

Plaintiff

| (A) | (B) |
|---|---|
| **SIGNATURE** _Nicholas E. Chimicles/smdm_ | **SIGNATURE** _Steven A. Schwartz/smdm_ |
| **NAME** NICHOLAS E. CHIMICLES | **NAME** STEVEN A. SCHWARTZ |
| **FIRM** CHIMICLES & TIKELLIS | **FIRM** CHIMICLES & TIKELLIS |
| **STREET ADDRESS** One Haverford Centre 361 West Lancaster Ave. | **STREET ADDRESS** One Haverford Centre 361 West Lancaster Ave. |
| **CITY/STATE/ZIP** Haverford, PA 19041 | **CITY/STATE/ZIP** Haverford, PA 19041 |
| **TELEPHONE NUMBER** (610) 642-8500 | **TELEPHONE NUMBER** (610) 642-8500 |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☑ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☑ |
| **TRIAL ATTORNEY?** YES ☑ NO ☐ | **TRIAL ATTORNEY?** YES ☑ NO ☐ |
| | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☑ |

| (C) | (D) |
|---|---|
| **SIGNATURE** | **SIGNATURE** |
| **NAME** | **NAME** |
| **FIRM** | **FIRM** |
| **STREET ADDRESS** | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☐ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

CROWLEY
vs.
GTE AIRFONE

DOCKETED
AUG 1 8 2000

00C 5062

Case Number:

JUDGE CONLON
MAGISTRATE JUDGE SCHENKIER

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

| (E) | (F) |
|---|---|
| SIGNATURE *Douglas G. Thompson /amb* | SIGNATURE *Roy A. Katriel /amb* |
| NAME DOUGLAS G. THOMPSON | NAME ROY A. KATRIEL |
| FIRM FINKELSTEIN, THOMPSON & LOUGHRAN | FIRM FINKELSTEIN, THOMPSON & LOUGHRAN |
| STREET ADDRESS 1055 Thomas Jefferson Street NW #601 | STREET ADDRESS 1055 Thomas Jefferson St. NW #601 |
| CITY/STATE/ZIP Washington, DC 20007 | CITY/STATE/ZIP Washington, DC 20007 |
| TELEPHONE NUMBER (202) 337-8000 | TELEPHONE NUMBER (202) 337-8000 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☑ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☑ |

| (G) | (H) |
|---|---|
| SIGNATURE *Lawrence A. Sucharow /amb* | SIGNATURE *Bernard Persky /amb* |
| NAME LAWRENCE A. SUCHAROW | NAME BERNARD FERSKY |
| FIRM GOODKIND LABATON RUDOFF & SUCHAROW LLP | FIRM GOODKIND LABATON RUDOFF & SUCHAROW LLP |
| STREET ADDRESS 100 Park Ave. | STREET ADDRESS 100 Park Ave. |
| CITY/STATE/ZIP New York, NY 10017 | CITY/STATE/ZIP New York, NY 10017 |
| TELEPHONE NUMBER (212) 907-0700 | TELEPHONE NUMBER (212) 907-0700 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☑ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☑ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

In the Matter of

CHRISTINE CROWLEY, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY
SITUATED
v.
GTE AIRFONE, INC.,
GTE CORPORATION

Case Number:

00C 5062

JUDGE CONLON

MAGISTRATE JUDGE SCHENKIER

### APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME MARVIN A. MILLER | NAME MATTHEW VAN TINE |
| FIRM MILLER FAUCHER and CAFFERTY LLP | FIRM MILLER FAUCHER and CAFFERTY LLP |
| STREET ADDRESS 30 N. LaSalle St., Suite 3200 | STREET ADDRESS 30 N. LaSalle St., Suite 3200 |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP Chicago, IL 60602 |
| TELEPHONE NUMBER (312) 782-4880 | TELEPHONE NUMBER (312) 782-4880 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01916769 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6186180 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☒ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME BRYAN L. CLOBES | NAME BURTON H. FINKELSTEIN |
| FIRM MILLER FAUCHER and CAFFERTY LLP | FIRM FINKELSTEIN, THOMPSON & LOUGHRAN |
| STREET ADDRESS 30 S. 15th St. Suite 2500 | STREET ADDRESS 1055 Thomas Jefferson St., NW Ste 601 |
| CITY/STATE/ZIP Philadelphia, PA 19102 | CITY/STATE/ZIP Washington, DC 20007 |
| TELEPHONE NUMBER (215) 864-2800 | TELEPHONE NUMBER (202) 337-8000 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**